IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| James Edward Floyd, ) | | C/A No.: 3:09-1147-JFA |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | | |
| ) | | **ORDER** |
| Investigator Wesley J. Gardner; ) | | |
| Sheriff Anthony Dennis; and Linda ) | | |
| Myers, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

This matter comes before the court on the summary judgment motions of Sheriff Anthony Dennis ("Dennis") and Investigator Wesley Gardner ("Gardner") [dkt. # 43], and Linda Meyers ("Meyers") [dkt. # 44]. The motions have been fully briefed and the court heard oral argument on April 7, 2010. This order serves to announce the ruling of the court.

I.  Factual and Procedural Background

A bomb exploded on February 12, 2009, on Meyers' front stoop in Sumter, South Carolina. In the aftermath of the explosion, Meyers observed a car drive away with who she believed was James E. Floyd ("Floyd"), her ex-husband, in the passenger's seat. As a bomb had recently detonated and Meyers was protected from Floyd by a family court protective order, she contacted the police and recounted the events, identifying Floyd as the bomber. The following morning, Dennis reviewed the prior day's incident reports, discussed the report with several officers, and determined that Floyd should be arrested and instructed Gardner to obtain a warrant. Gardner thereafter procured a warrant from a magistrate for

Floyd's arrest for possession of an explosive device and violation of the court protective order. Gardner served the warrant and arrested Floyd on February 13, 2009. On February 17, 2009, investigation by Gardner revealed that three teenagers detonated the bomb, and not Floyd. The charges against Floyd were dismissed and he was set free on February 18, 2009.

A story appeared in the February 14, 2009 edition of The Item, a newspaper in Sumter, which quoted Dennis as stating "[Floyd] set off some type of bomb, and there was an explosion" and attributed a comment to Meyer indicating that she recognized Floyd's car after the explosion.

On May 2, 2009, Floyd filed suit in The United States District Court of the District of South Carolina alleging violation of his Fourth Amendment rights, false arrest, malicious prosecution, violation of due process pursuant to 42 U.S.C. § 1983, and civil conspiracy. The defendants thereafter moved for summary judgment. Floyd responded to both motions, and abandoned his due process claim pursuant to the Fourteenth Amendment.

II.  Discussion

   A.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

B.   Dennis and Gardner's Motion for Summary Judgment

Dennis and Gardner assert that to the extent that they are sued in their official capacity, they are not persons under § 1983 and that the Eleventh Amendment prevents suit against them in federal court. They also assert that to the extent that Floyd pursues state law claims against them under the South Carolina Tort Claims Act, the sheriff of Sumter county in his official capacity is their statutory representative and he is not amendable to suit in federal court pursuant to the Eleventh Amendment. Dennis and Gardner also contend that any § 1983 claims against them in their individual capacities must fail as probable cause to arrest was readily apparent. In support of this position, they cite the protective order issued

3

by the family court, the urgent 911 call, and the positive identification of Floyd by Meyers. They allege that the remaining claims fail for want of evidentiary support

    1.    The Eleventh Amendment

The Eleventh Amendment bars suit against a state in federal court absent waiver or abrogation. See U.S. Const. amend. XI; Hans v. Louisiana, 134 U.S. 1 (1980). But see Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002) (removal waives Eleventh Amendment immunity from suit); Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996) (Congress may abrogate States' immunity from suit pursuant to a clear intention to do so and a valid exercise of power). It is well established under South Carolina law that a county sheriff is a state official and suit against him operates as a suit against the state of South Carolina. Gulledge v. Smart, 691 F. Supp. 947, 954 (D.S.C. 1988), aff'd 878 F.2d 379 (4th Cir. 1989) (unpublished table decision); see also Stewart v. Beaufort County, 481 F. Supp. 2d 483, 492 (D.S.C. 2007). Accordingly, to the extent that Floyd asserts § 1983 claims against Dennis and Gardner in their official capacities, those claims are barred by the Eleventh Amendment. Also, to the extent that Floyd seeks to recover under the South Carolina Tort Claims Act ("SCTCA"), Dennis, in his official capacity, is the appropriate representative and is immune from suit in federal court. Floyd's claims against Dennis and Gardner, in their individual capacities, shall be addressed below.

    2.    The Fourth Amendment

The Fourth Amendment prohibits law enforcement officers from making unreasonable

seizures; seizure absent probable cause is unreasonable.  Miller v. Prince George's County, 475 F.3d 621 (4th Cir. 2007).  However, a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant.  Porterfield v. Lott, 156 F.3d 563 (4th Cir. 1998).  Rather, claims seeking damages for the period after legal process has issued "are analogous to the common-law tort of malicious prosecution."  Id.; Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996) (the Fourth Amendment is "broad enough to encompass a claim that legal process issued without probable cause").  Such a claim may arise where an individual was seized pursuant to legal process that was not supported by probable cause and the resulting criminal proceedings terminated in his favor.  Brooks, 85 F.3d at 183.  The facts before the court indicate that the proceedings terminated in Floyd's favor.  Accordingly, the question before the court is whether probable cause existed to arrest Floyd.

"Probable cause" means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Michigan v. De Fillippo, 443 U.S. 31, 37 (1979).  However, "[w]hile probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict."  United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998).  Probable cause may also be based on uncharged conduct.  See, e.g., Davenpeck v. Alford, 543 U.S. 146, 154–56 (2004); Jackson v. City of Abbeville, 623 S.E.2d 656, 660 (S.C. App. 2005).

5

Two factors inform the determination of probable cause: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Prichett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). "As its name suggests, probable cause involves probabilities—judgment calls that are tethered to context and rooted in common sense." United States v. White, 549 F.3d 946, 947 (4th Cir. 2008). To prove an absence of probable cause to arrest under the Fourth Amendment, the arrestee must allege a set of facts which make it unjustifiable for a reasonable officer to conclude he is violating the law. Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002).

Floyd's conduct, as it was known to Gardner and Dennis, consisted of an incident report prepared by the Deputy Pomichalek, the officer who responded to the 911 call, and the 911 call. (Gardner Aff. ¶ 6.) A protective order issued by a family court to protect Meyers from Floyd was on file at the police station. (Id.) In both the incident report and the 911 call, Meyers identified her husband as the individual who detonated the bomb on her porch. (Gardner Aff. Ex. A, Ex. B.) Discussion between Captain Turner and Dennis concerning the incident report, the 911 call, and the protective order resulted in Turner advising Gardner that he believed there was sufficient evidence that Floyd committed the suspect crimes to seek a warrant for his arrest. (Gardener Aff. ¶ 4.; Dennis Dep. 6–7.) Gardner agreed and proceeded to the magistrate's office to obtain a warrant. (Id.) Gardner informed the magistrate of the incident report, the order of protection, and the 911 call made by Meyers; the magistrate signed warrants for possessing a destructive device and for violation of an

order of protection. (Id. ¶ 6.)

The crime of possessing a destructive device encompasses conduct whereby a person "possesses, manufactures, transports, distributes, or possesses with the intent to distribute a destructive device or any explosive, incendiary device, or over-pressure device or toxic substance or material which has been configured to cause damage, injury, or death" or where a person "possesses parts, components, or materials which when assembled constitute a destructive device." S.C. Code Ann. § 16-23-720(c) (Supp. 2009). The incident report unequivocally stated that Floyd placed the bomb on the front of Meyers' house and that Meyers saw Floyd in the passenger seat of a car as it fled the scene shortly after detonation. The incident report also noted that pieces of aluminum foil and plastic were in the area, evidencing the recent explosion. (Gardner Aff. Ex. A.) Importantly, Meyers never hedged in her identification of Floyd as the bomber in either the 911 call or in the incident report. Based on the evidence in the record, the court finds that Dennis and Gardner both possessed sufficient knowledge to charge Floyd with the crime of possessing a destructive device.

The magistrate also issued a warrant for violation of S.C. Code Ann. § 16-25-20(E) (Supp. 2009), which requires a person charged pursuant to Chapter 25 of Title 16 to appear before a judge for disposition of his case. That provision does not appear to apply to the facts of this case. However, because probable cause may rest upon uncharged conduct, and because Gardner had reason to believe that Floyd had violated a court order of protection, the court finds that Gardner possessed probable cause to arrest Floyd pursuant to S.C. Code

Ann. § 16-25-20(D) (Supp. 2009). Section 15-25-20(D) makes it a crime to violate a court-issued protective order.

Accordingly, because the court finds that a facially valid warrant issued, and that probable cause existed to arrest Floyd, both the false arrest and malicious prosecution claims grounded in the Fourth Amendment are dismissed with prejudice as to Gardner and Dennis.

To the extent that Floyd asserts that the warrant was defective because it was based on a dishonest affidavit, he has failed to satisfy the burden established in Franks v. Delaware, 438 U.S. 154 (1978), and argues in direct contradiction to his deposition testimony. Franks requires a "substantial showing" that an affidavit was executed with knowledge it was false or with a reckless disregard for the truth. In the light most favorable to Floyd, the record compels the court to conclude that the information possessed by Gardner and Dennis supported probable cause to arrest, especially where Floyd stated in his deposition that "I don't have any evidence" that Gardner falsely swore out the arrest warrant. (Floyd Dep. 114:3–5.)

To find that Gardner recklessly or intentionally provided false information to the magistrate would effectively require Gardner to question the veracity of the incident report and the credibility of the 911 call without cause and in the absence of such an allegation from Floyd. (Id.) Moreover, the Fourth Circuit has found that it is reasonable for a police officer to base his belief in probable cause on a victim's identification of his attacker. See Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir. 1991) ("It is surely reasonable for a police

officer to base his belief in probable cause on a victim's reliable identification of his attacker."); McKinney v. Richland County Sheriff's Dep't, 431 F.3d 415, 418–19 (4th Cir. 2005) ("The fact that [the officer] did not conduct a more thorough investigation before seeking an arrest warrant does not negate the probable cause established by the victim's identification."). Floyd cannot establish that at the time the warrant was sworn that the information was provided with reckless disregard for the truth or with an intent to be dishonest because the record fails to support such an argument. Meyers identified the bomber as her husband without hesitation on both the 911 call and in the incident report. Pursuant to Torchinsky and McKinney, Floyd cannot show that Gardner or Dennis acted unreasonably, quite the contrary.

        3.    State-Law False Arrest and Malicious Prosecution

Floyd's state-law claims against Gardner and Dennis for false arrest and malicious prosecution fall under the SCTCA. See S.C. Code Ann. 15-78-70 (2005). The record reflects that at all times relevant to this proceeding Gardner and Dennis acted within the scope of their official duties. Floyd has not alleged facts sufficient to establish that Gardner and Dennis acted outside their official duties nor has he argued, or alleged facts to support, that their conduct constitutes "actual fraud, actual malice, intent to harm" or involved "moral turpitude." S.C. Code Ann. § 15-78-60(17) (2005). As such, Sheriff Dennis in his official capacity is the proper party, he is immune from suit in federal court pursuant to the Eleventh Amendment, and Floyd's state law claims for false arrest and malicious prosecution are

9

dismissed without prejudice for want of jurisdiction.[1]

    4.  Civil Conspiracy

Floyd's allegation of civil conspiracy, in toto, states that "[Meyers, Gardner, and Dennis] acted together and with others to injure [Floyd] by committing unlawful acts and/or committing lawful acts by unlawful means," and that "acts were taken in furtherance of a conspiracy" and "as a result . . . [Floyd] was terrorized, underwent extreme emotional distress and has suffered as heretofore set forth." (Compl. ¶¶ 25–27.) Floyd failed to specify in the complaint whether he asserts his civil conspiracy claim pursuant to state law or pursuant to § 1983. Critically, in Floyd's deposition, he responded to the question "Do you have any information that Gardner and Dennis conspired with Myers [sic] to have you arrested?" with "Oh, no sir." (Floyd Dep. 113:13–114:2.) Argument at the hearing confirmed the infirmity of Floyd's argument, where his counsel stated it was merely his belief that the parties acted in concert and offered nothing more than speculation.

An essential element to a § 1983 claim for civil conspiracy is the factual allegation of an overt act in furtherance of the conspiracy. See Hinkle v. City of Clarksburg, 81 F.3d 416 (4th Cir. 1996). Floyd has failed to allege any such overt act and admits that he has no evidence beyond the legal conclusions stated in his complaint. Accordingly, his claim for conspiracy pursuant to § 1983 must fail.

  C.  Meyers' Motion for Summary Judgment

---

[1] Even if the court could properly consider the state law claims against Sheriff Dennis in his official capacity, such claims would fail due to the presence of probable cause.

Meyers contends that, as a private citizen in a private capacity, she cannot be held liable pursuant to the Fourth Amendment. Meyers asserts that this is especially true where she did not personally seize Floyd. She also contends that Floyd's claims for false arrest, malicious prosecution, and civil conspiracy fail for want of evidentiary support.

1. The Fourth Amendment

The Fourth Amendment proscribes government seizure of a person absent probable cause. The Supreme Court has "consistently construed this protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Jacobsen, 466 U.S. 109 (1984) (quoting Walter v. United States, 447 U.S. 649, 662 (1980). The question commonly posed is whether an individual acted as an "instrument" or "agent" of the government. Determining whether the requisite agency relationship exists "necessarily turns on the degree of the Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.'" United States v. Jarrett, 338 F.3d 339 (4th Cir. 2003) (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614–15 (1989). Such a fact-intensive determination turns on common law agency principles. Id. Floyd has put forth no evidence to suggest that Meyers was acting as an "instrument" or "agent of the state." Mere speculation will not suffice to defeat summary judgment. Accordingly, any claim against Meyers pursuant to the Fourth Amendment, whether for

11

illegal seizure or malicious prosecution, or its § 1983 analogue as discussed in Porterfield v. Lott, 156 F.3d 563, fails as a matter of law.

2. Civil Conspiracy

The court adopts by reference the analysis provided above as it related to Floyd's claim for civil conspiracy. See Part II.A.4. Putting aside the serious question as to whether a claim for civil conspiracy with a nongovernment actor is actionable pursuant § 1983, the court finds that Floyd has failed to put forth evidence beyond rank speculation that would support a claim for § 1983 civil conspiracy. Accordingly, Floyd's claim for civil conspiracy against Meyers is dismissed with prejudice for failure of evidentiary support.

3. Remaining State-Law Claims

Floyd's remaining claims against Meyers include malicious prosecution, false arrest, and, possible, state-law civil conspiracy. All federal claims against Gardner, Dennis, and Meyers have been dismissed with prejudice. Accordingly, pursuant to 28 U.S.C. 1367(c)(3), this court hereby exercises its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims.

III. Conclusion

Based on the foregoing, the court grants Dennis and Gardner's motion for summary judgment in full [dkt. # 43] and Meyer's motion for summary judgment in part [dkt. # 44]. The court finds that all Fourth Amendment and constitutional civil conspiracy claims against Gardner and Dennis in their individual capacities pursuant to § 1983 are dismissed with

prejudice. As the court dismisses Floyd's state-law claims for false arrest and malicious prosecution against Gardner and Dennis pursuant to the Eleventh Amendment, such dismissal shall be without prejudice. To the extent that Floyd asserts a state-law civil conspiracy claim against Gardner and Dennis, the court declines to exercise jurisdiction over the claim and dismisses the same without prejudice. The court also hereby dismisses with prejudice all § 1983 claims against Meyers, and declines to exercise supplemental jurisdiction over the remaining state-law claims against her; such claims are dismissed without prejudice.

    IT IS SO ORDERED.

April 8, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge